## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **THE GARY FAMILY TRUST ex rel.** | ) | |
| **JOE L. GARY, BARBARA N. GARY,** | ) | |
| **STACEY HIEBERT, AND LELAND** | ) | |
| **SCOTT GARY as Co-Trustees, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-618-G** |
| | ) | |
| **STEVEN T. GARY, Individually, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER</u>

Now before the Court is Plaintiffs' Motion to Remand (Doc. No. 14). Defendants have responded in opposition to the Motion (Doc. Nos. 19, 20), and Plaintiffs have replied (Doc. No. 22). Plaintiffs have also filed a supplemental brief (Doc. No. 30), which includes additional argument and evidence supporting their Motion.[1]

### SUMMARY OF THE PLEADINGS

Plaintiffs Joe L. Gary and Barbara N. Gary ("Joe," "Barbara," and collectively the "Gary Plaintiffs") are the parents of Defendant Steven T. Gary ("Steve") and co-trustees of Plaintiffs The Gary Family Trust and The Dorothy Van-Noy Gary Trust (the "Trust Plaintiffs"). Pet. (Doc. No. 1-1) ¶¶ 1-4. The Petition alleges the following:

---

[1] In accordance with Local Civil Rule 7.1(i), Plaintiffs obtained leave of court prior to filing their supplemental brief. *See* Doc. Nos. 24 and 29. On December 4, 2020, Defendants filed a response to Plaintiffs' supplemental brief without court authorization (Doc. No. 31). Although Defendants' response was filed in violation of Local Civil Rule 7.1(i), the Court nonetheless considered it prior to issuing this order.

- Steve, "acting individually, and as an agent or employee" of Defendants Steve Gary Insurance Agency, Inc. (the "Agency"), State Farm Life Insurance Company, State Farm Bank, F.S.B., and State Farm VP Management Corp. (collectively, "State Farm"), "orchestrated and executed an elaborate scheme" to financially exploit Plaintiffs. *Id.* ¶¶ 11, 15.  Steve's wife, Defendant Nancy M. Gary ("Nancy"), allegedly knew about and helped to conceal the financial exploitation.  *See id.* ¶¶ 71, 73.

- Steve created the Agency, an Oklahoma corporation, in 1994 as a vehicle through which to sell insurance and other investment products on behalf of State Farm.  *Id.* ¶ 29.  "Thereafter, and over the course of many years," Steve "churn[ed] revenue and commissions" by selling Plaintiffs an excessive number of State Farm products, including more than 40 life insurance policies.  *Id.* ¶¶ 30-33.  Several of these policies "insur[ed] the lives of extended family members," in whose lives "Plaintiffs had no insurable interest," and were issued "without obtaining necessary consent or providing mandatory notice to the insured[s]."  *Id.* ¶¶ 32-33.  Plaintiffs believe that, to procure such policies, Steve forged the insureds' signatures on the life insurance applications and related paperwork.  *See* Pls.' Suppl. Br. (Doc. No. 30) at 3-4.  Apart from the life insurance policies, Steve sold Plaintiffs a deferred life annuity and persuaded them to invest in mutual funds and to open various checking and money market accounts at State Farm Bank, F.S.B.  Pet. ¶¶ 47, 51-52, 56-58.

- From 1994 to 2020, Steve maintained "access to and control over . . . Plaintiffs' bank accounts, investments, and insurance policies" and, over the course of this time

period, misappropriated millions of dollars belonging to Plaintiffs.  *Id.* ¶ 14; *see also*
*id.* ¶¶ 15-18.  As early as 2006, Steve began processing unauthorized loan requests
on the life insurance policies he had sold to Plaintiffs, squandering the proceeds for
his own personal use and enjoyment.  *Id.* ¶¶ 16, 18, 34-40.  On several of the
policies, Steve "unilaterally and without authorization change[d] the beneficiary
designation" "to name himself as sole successor beneficiary."  *Id.* ¶¶ 41-45.

- In or around 2008, Steve began withdrawing funds from Plaintiffs' deferred life
  annuity and concealing the tax consequences of such withdrawals "by misdirecting
  the resulting 1099's and by controlling all tax preparation" for the Gary Plaintiffs.
  *Id.* ¶¶ 48-50 *see also id.* ¶ 18.  As early as April 2010, Steve began making
  "unauthorized transactions" on certain bank accounts held by the Trust Plaintiffs,
  forging his parents' signatures on checks and impersonating his father on the
  telephone as needed to complete the transactions.  *Id.* ¶¶ 59-65.

- For years, Steve concealed the foregoing misconduct by:

  (1) maintain[ing] exclusive control of passwords to Plaintiffs' financial
  accounts; (2) misdirect[ing] Plaintiffs' mail by putting his own home address
  on Plaintiffs' policies; (3) misdirect[ing] electronic communication by
  putting his own personal email address on Plaintiffs' accounts; (4)
  harbor[ing] the key to Plaintiffs' mailbox and filter[ing] their mail before
  delivering it; and (5) verbally misrepresent[ing] the status and condition of
  Plaintiffs' financial affairs.

  *Id.* ¶ 19.

- In or around March 2018, State Farm initiated an investigation into Steve's conduct.
  *Id.* ¶ 68.  To aid in the investigation, State Farm scheduled an interview with the
  Gary Plaintiffs for June 8, 2018.  *Id.* ¶ 69.  Prior to the interview, Steve and Nancy

"coached and instructed [the Gary Plaintiffs] on how they should answer State Farm's inquiries" and induced them to "execute false and backdated power of attorney documents." *Id.* ¶¶ 71-72.   On October 12, 2018, State Farm VP Management Corp. terminated Steve for violating "internal processes related to life insurance policy loans." *Id.* ¶ 77.

On June 8, 2020, Plaintiffs filed this lawsuit in the District Court of Oklahoma County, Oklahoma, asserting claims against Defendants for negligence, breach of fiduciary duty, fraud, conversion, breach of contract, unjust enrichment, bad-faith breach of contract, and intentional infliction of emotional distress.   The lawsuit was removed by Steve and Nancy to federal court on June 29, 2020.   *See* Notice of Removal (Doc. No. 1).[2]   Plaintiffs filed their Motion to Remand on July 28, 2020.

ANALYSIS

Defendants submit federal jurisdiction is proper under 28 U.S.C. § 1332(a), which requires complete diversity among the parties—i.e., the citizenship of all defendants must be different from the citizenship of all plaintiffs.   *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008).   Defendants contend Plaintiffs are citizens of Oklahoma and, with the exception of the Agency whose citizenship should be ignored under the doctrine of fraudulent joinder, Defendants are noncitizens of Oklahoma.   *See* Defs.' Resp. (Doc. No. 19) at 2-4; Notice of Removal ¶¶ 5-7.   Alternatively, Defendants argue the Agency is "not indispensable" and should therefore be dismissed under Rule 21 of the Federal Rules of Civil

---

[2] State Farm filed its Notice of Consent to removal on July 7, 2020.   *See* Notice of Consent to Removal (Doc. No. 5).

4

Procedure.  Defs.' Resp. at 4-6.

I.    *Defendants' Fraudulent-Joinder Argument*

A.    Standard of Decision

Under the fraudulent-joinder doctrine, a federal court assessing the propriety of removal may disregard the citizenship of a nondiverse defendant against whom the plaintiff has not or cannot assert a colorable claim for relief.  *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013).   "To establish fraudulent joinder, the removing party must demonstrate either: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Id.* (alteration and internal quotation marks omitted); *see also Hernandez v. Liberty Ins. Corp.*, 73 F. Supp. 3d 1332, 1336 (W.D. Okla. 2014).

"'[U]pon specific allegations of fraudulent joinder[,] the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'"  *White v. Mylan, Inc.*, No. CIV-12-402-D, 2012 WL 6726593, at *2 (W.D. Okla. Dec. 27, 2012) (quoting *Dodd v. Fawcett Publ'ns, Inc.,* 329 F.2d 82, 84-85 (10th Cir. 1964)).  But "[t]his does not mean that the federal court will pre-try . . . doubtful issues of fact to determine removability."  *Id.*  (internal quotation marks omitted).  The issue must instead "be capable of summary determination and be proven with complete certainty."  *Id.* (internal quotation marks omitted).  Any uncertainty regarding the viability of the claims asserted against the nondiverse party—including "disputed questions of fact" and "ambiguities in the controlling law"—must be resolved in favor of remand.  *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000) (internal

quotation marks omitted); *accord Dutcher*, 733 F.3d at 988 (discussing the removing party's "heavy burden").

    B.    <u>Defendants Have Not Shown with "Complete Certainty" That Plaintiffs Cannot Prevail Against the Agency</u>

Defendants argue that Plaintiffs cannot state a colorable claim for relief against the Agency because it is a "defunct entity" that did not participate in the alleged dealings between Steve and Plaintiffs. Defs.' Resp. at 2-4. Defendants support this argument with sworn testimony from Steve, who avers: (1) that he sold State Farm products through the Agency from 1994 until January 1998, when he "became directly employed as a manager for State Farm Insurance"; (2) that he occupied the State Farm managerial role until January 2000, when he moved to Texas and began selling State Farm products as a sole proprietor; (3) that the Agency has not engaged in any business since January 1998; and (4) that he "allowed the [Agency's] charter . . . to be suspended by the Oklahoma Secretary of State" in 2006. Aff. of Steven Gary (Doc. Nos. 19-1, 20-1) at 2-3. Defendants also submit a Certificate of Suspension showing that the Agency was suspended on August 18, 2006, "for failure to comply with the requirements of the Oklahoma Tax Act." *Id.* at 6. In sum, Defendants' position is that the sole proprietorship through which Steve has been selling State Farm products since January 2000 is legally distinct from the Oklahoma-based corporation he formed in 1994 for that same purpose. *See* Defs.' Resp. at 4. They argue that the alleged wrongdoing is thus attributable not to the Agency, but to the Texas-based sole proprietorship.

Plaintiffs cast doubt on Defendants' position by submitting various items of evidence reflecting "ongoing," "continuous" Agency operations. Pls.' Reply (Doc. No. 22) at 3; Pls.'

Mot. at 20.   For example, Plaintiffs point out that Steve maintains a website (www.stevegary.com), a Twitter account (@SteveGaryAgency), and a LinkedIn account identifying himself as the head of a State Farm insurance agency founded in 1992.  *See* Pls.' Mot. Exs. 15 (Doc. No. 14-15), 16 (Doc. No. 14-16), 17 (Doc. No. 14-17).  Moreover, Steve's wife Nancy reports having served as the Operations Manager for her husband's insurance agency from 1996 through 2019.  *See* Pls.' Mot. Exs. 18 (Doc. No. 14-18), 19 (Doc. No. 14-19).  Finally, Plaintiffs point to a lack of evidence showing that the Agency "is dissolved or otherwise distinct from the current agency operations of Defendant Steve Gary," e.g., "a certificate of dissolution, tax returns, payroll records, registrations, [or] department of insurance records."  Pls.' Reply at 3-4.

Plaintiffs likewise offer evidence supporting their theory that Steve, acting by and through the Agency, sold Plaintiffs a number of fraudulent life insurance policies to churn commissions and to serve as his own personal line of credit.  Specifically, Plaintiffs submit three Applications for Life Insurance requesting policies on behalf of Plaintiffs insuring the lives of Leland Scott Gary (Policy No. LF-1446-0456), Stacey Hiebert (Policy No. LF-1446-0397), and Don Hiebert (Policy No. LF-1446-0430).  All three Applications bear the stamp "STEVE GARY INS. AGENCY, INC." and were issued in October 1994 when Steve was undisputedly selling insurance through the Agency.  *See* Pls.' Suppl. Br. Exs. 1-3 (Doc. Nos 30-1, 30-2, 30-3).  Accompanying each Application is an affidavit by the proposed insured averring:

> The Application for Life Insurance falsely purports to reflect my signature consenting to the subject policy being initiated on my life.  The handwriting and signatures on the subject Application for Life Insurance are not mine.  I

did not request, complete, or execute the subject materials.

I had no knowledge of the Application for Life Insurance . . . nor had I ever
seen them prior to November 11, 2020.

Pls.' Suppl. Br. Exs. 4-6 (Doc. Nos. 30-4, 30-5, 30-6).

As an initial matter, the Court rejects Defendants' suggestion that Plaintiffs have no
claim for relief against the Agency as a result of the 2006 suspension.  Under Oklahoma law,
a corporation that is suspended for nonpayment of franchise taxes forfeits its "right to sue and
defend in any court of this state."  Okla. Stat. tit. 68, § 1212(C).  But since those rights "can
be revived and reinstated," the corporation is not "legally dead, as would be the case if it
were dissolved."  *Moncrieff-Yeates v. Kane*, 323 P.3d 215, 220 (Okla. 2013) (internal
quotation marks omitted).  Consequently, a suspended corporation remains subject to suit
in Oklahoma even though it is unable to defend itself or seek affirmative relief from the
court.  *See, e.g.*, *Aviation Data Serv., Inc. v. A.C.E. Copier Serv., Inc.*, 832 P.2d 31, 32-33
(Okla. Civ. App. 1992).

The Court next considers Defendants' argument that the Agency did not participate in
the alleged scheme to financially exploit Plaintiffs.  The Court concludes, with respect to this
argument, that Defendants have not carried their burden to show *with complete certainty* that
Plaintiffs cannot prevail on any of their claims against the Agency.

Defendants rely almost entirely on the self-serving testimony of Steve for the
proposition that the alleged malfeasance was committed not through the Agency but through

a legally distinct entity based in Texas.[3]   Defendants submit no evidence to corroborate Steve's testimony.   Plaintiffs, on the other hand, have come forward with at least "*some evidence*" tending to disprove Defendants' theory of separate entities.   *Maples v. FCA U.S. LLC*, No. 15-CV-158-TCK-PJC, 2015 WL 5971092, at *2 (N.D. Okla. Oct. 14, 2015); *see also Wagoner v. Hussey Seating Co.,* No. 13-CV-352-TCK, 2013 WL 6048853, at *3 (N.D. Okla. Nov. 14, 2013) (describing "[t]he quantum of evidence" required to defeat removal as "low").   Moreover, Plaintiffs have offered evidence suggesting that the Agency was involved in the financial-exploitation scheme at its inception in 1994.   This evidence implicates the Agency in the alleged wrongdoing even assuming, as Defendants argue, that there exists a legal distinction between the Agency and the Texas-based proprietorship.   At a minimum, the evidence submitted by Plaintiffs creates a fact question on the issue of the Agency's involvement, which must be resolved in favor of remand.   *See Montano*, 2000 WL 525592, at *2.

   II.   *Defendants' Rule 21 Argument*

      Alternatively, Defendants urge the Court to dismiss the Agency under Rule 21 of the Federal Rules of Civil Procedure.   *See* Defs.' Resp. at 4-6.   Rule 21 permits the court to dismiss a dispensable party "at any point in the litigation, including after judgment has been entered," in order to "cure a jurisdictional defect."   *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011).   "[W]hether a party is

---

[3] Defendants also argue that Steve was "the only person apparently investigated by regulators" and "who signed the resulting 'Letter of Acceptance, Waiver And Consent.'" Defs.' Resp. at 4.  The Court is not persuaded that the scope of the regulatory investigation determines the scope of parties that would be liable for the alleged misconduct.

indispensable, and whether a dispensable party may be dismissed to maintain diversity" are matters within the trial court's discretion. *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1369 (10th Cir. 1998). The Supreme Court has cautioned that Rule 21 "authority should be exercised sparingly" and that courts should "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Newman-Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 837-38 (1989).

The Tenth Circuit has recognized the propriety of using Rule 21 to dismiss a nondiverse party in order to preserve a ruling in which the court and parties have invested considerable time and effort. *See Varley v. Tampax, Inc.*, 855 F.2d 696, 701 (10th Cir. 1988) (holding that district court should have exercised its discretion to dismiss two nondiverse defendants in order to "preserve the integrity of its . . . order granting summary judgment for [defendant] Tampax"). But courts in this circuit have consistently refused to use Rule 21 in the manner advocated by Defendants—namely, to "create diversity jurisdiction by carving out the non-diverse parties in a case removed from the state system." *Shannon v. Val Mejias*, No. CIV.A.06-1191-MLB, 2006 WL 3201118, at *5 (D. Kan. Nov. 3, 2006); *accord Nichols v. Medtronic, Inc.*, No. CIV-20-326-F, 2020 WL 3050770, at *4 (W.D. Okla. June 8, 2020); *Echols v. OMNI Med. Grp., Inc.*, 751 F. Supp. 2d 1214, 1217 (N.D. Okla. 2010); *Klintworth v. Valley Forge Ins. Co.*, No. 17-CV-448-JHP-JFJ, 2018 WL 4945237, at *4 (N.D. Okla. Aug. 15, 2018) (R. & R.), *adopted,* 2018 WL 4521219 (N.D. Okla. Sept. 21, 2018).

The Court agrees with the foregoing decisions and, accordingly, denies Defendants'

request for dismissal under Rule 21.[4]

CONCLUSION

For the reasons set forth above, the Court:

(1) concludes that there is not complete diversity of parties as required to establish jurisdiction under 28 U.S.C. § 1332(a) and, therefore, GRANTS Plaintiffs' Motion to Remand (Doc. No. 14);

(2) REMANDS this matter to the District Court of Oklahoma County, Oklahoma; and

(3) DIRECTS the Clerk of this Court to send a certified copy of this Order to the Clerk of the state court to which this matter is remanded.

IT IS SO ORDERED this 7th day of December, 2020.

CHARLES B. GOODWIN
United States District Judge

---

[4] The Court does not reach the question of whether the Agency is an improperly joined party under Rule 20 of the Federal Rules of Civil Procedure.